# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| NETJETS ASSOCIATION OF SHARED AIRCRAFT PILOTS, <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>NETJETS AVIATION, INC. <br>4111 Bridgeway Ave. <br>Columbus, OH 43219 <br><br>　　　　Defendant. | CASE NO. 2:12-cv-991 |

## COMPLAINT TO COMPEL ARBITRATION

The NetJets Association of Shared Aircraft Pilots ("NJASAP") states the following Complaint to compel the Defendant NetJets Aviation, Inc. ("NetJets") to arbitrate a grievance over the Defendant's discharge of pilot Peter Elmore before the parties' System Board of Adjustment in accordance with the defendant's obligations under Sections 2 and 204 of the Railway Labor Act:

## STATEMENT OF JURISDICTION

1.　　This action arises under the Railway Labor Act ("RLA" or "the Act"), 45 U.S.C. §§ 151, *et seq.*, and this Court therefore has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This Court possesses jurisdiction to enforce the parties' obligations under the Railway Labor Act and to grant an order compelling the Defendant to arbitrate the grievance in dispute between the parties before their System Board of Adjustment.

## VENUE

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 as Defendant has its principal place of business within this judicial district and pilots in the service of the Defendant are based in this judicial district.

## PARTIES

3. Plaintiff NJASAP is an unincorporated labor organization with its headquarters at 630 Morrison Rd., Suite 110, Columbus, Ohio 43232. NJASAP is the certified bargaining representative of the pilots in the service of NetJets pursuant to a certification issued by the National Mediation Board on August 26, 2008 in NMB Case Number R-7171. *See* Exhibit 1 attached.

4. Defendant NetJets Aviation, Inc. is a "carrier" as that term is defined in Title II, Sections 201 and 202 of the RLA, 45 U.S.C. §§ 181, 182. Defendant is a Delaware corporation registered as a foreign corporation to do business in the state of Ohio. NetJets maintains its principal place of business at 4111 Bridgeway Ave, Columbus, OH 43219.

## FACTS

5. NetJets is an air carrier providing "fractional" business jet operations to its owners/customers, who purchase a share in a business jet (akin to a timeshare in a property), consisting of as much as a full share of an aircraft, making the customer the sole owner of the aircraft, to as small as a $1/16^{th}$ share of an aircraft, making the customer a co-owner along with other owners of fractional shares in that aircraft.

6. NetJets employs approximately 3,000 pilots, including approximately 2,500 who are actively flying for the Company (commonly called "line pilots").

7. On August 26, 2008, NJASAP became the certified bargaining representative of NetJets' pilots in place of the International Brotherhood of Teamsters. *See* Exhibit 1.

8. NJASAP and NetJets thereafter executed a letter of agreement on July 11, 2008, in which NJASAP succeeded to the NetJets/IBT collective bargaining agreement. *See* Exhibit 3.

9. The parties' collective bargaining agreement contains their agreement to establish a System Board of Adjustment in accordance with their duty under § 204 of the RLA and to establish procedures for the adjustment of grievances. *See* Exhibit 2, Sections 21 and 22, pp. 191-205.

10. The parties' collective bargaining agreement states in Section 22.3 that the parties' System Board of Adjustment shall have jurisdiction:

> Over disputes between any crewmember covered by this Agreement and the Company growing out of grievances or out of interpretation or application of any of the terms of this agreement. The jurisdiction of the Board will not extend to proposed changes in hours of employment, rates of compensation or working conditions covered by existing agreement between the parties hereto. The Board will have no authority to modify, amend revise, add to, subtract from any of the terms or conditions of this Agreement.

11. Peter Elmore was employed as a pilot by NetJets on June 18, 2001.

12. As of September 2012, Elmore served in a management pilot position.

13. Throughout the duration of his employment at NetJets, including while serving as a management pilot, Elmore was listed on the pilot system seniority list established under Section 5 of the parties' agreement. *See* Exhibit 4, p.2 (#1007).

14. Under Section 5.5(b) of the collective bargaining agreement, management pilots on the pilot seniority list retain and continue to accrue seniority. *See* Exhibit 2, pp. 42-43.

15. On September 24, 2012, NetJets notified Elmore that it was terminating his employment from NetJets, including his position as a line pilot on the NetJets pilot system seniority list.

16. On September 24, 2012, Elmore filed a grievance with NJASAP contesting his termination as a line pilot from NetJets.

17. On October 4, 2012, NJASAP notified NetJets that it would submit Elmore's grievance for arbitration before the parties' System Board of Adjustment for final and binding resolution under Section 22 of the parties' agreement.

18. On October 16, 2012, NetJets asserted that Elmore's grievance "is not substantively arbitrable" and refused to submit to the System Board of Adjustment's authority over Elmore's grievance.

## CLAIM FOR RELIEF
## (ORDER COMPELLING ARBITRATION)

19. NJASAP incorporates by reference the allegations of paragraphs 1 to 18 pursuant to Fed. R. Civ. P. 10(c).

20. As a carrier subject to the RLA, NetJets is required to exert every reasonable effort to settle all disputes, whether arising out of the application of a collective bargaining agreement or otherwise. 45 U.S.C. § 152, First.

21. NetJets is required to consider and decide all disputes between it and its employees "with all expedition" in conference with NJASAP as the designated representative of its pilots. 45 U.S.C. § 152, Second.

22. NetJets is required to confer with NJASAP as the representative of its pilots within ten days of receipt of a notice requesting a conference on a dispute arising out of grievances or out of the interpretation or application of a collective bargaining agreement.  45 U.S.C. § 152, Sixth.

23. NetJets is also required to establish a System Board of Adjustment for the purpose of resolving disputes between it and an employee or group of employees over the interpretation or application of collective bargaining agreements.  45 U.S.C. § 184.

24. The System Board of Adjustment established by the parties pursuant to 45 U.S.C. § 184 possesses exclusive jurisdiction over all disputes arising out of grievances or out of the interpretation or application of the collective bargaining agreement concerning rates of pay, rules and working conditions.

25. The dispute between the parties over NetJets' termination of Elmore raises a dispute over the interpretation or application of their collective bargaining agreement.

26. The grievance procedure of the NetJets/NJASAP collective bargaining agreement was invoked in a timely manner by Elmore.

27. NetJets is obligated by the Railway Labor Act to arbitrate Elmore's grievance before the parties' System Board of Adjustment.

28. NetJets has refused to participate in the mandatory grievance adjustment process "at any stage", including arbitration before the System Board of Adjustment, concerning the parties' dispute over Mr. Elmore's discharge.

29. NetJets' refusal to comply with the grievance adjustment process set forth in the NetJets/NJASAP collective bargaining agreement, including submission of the parties' dispute over Elmore's discharge to the System Board of Adjustment,  violates 45 U.S.C. §§ 152, First, Second, Sixth and § 184.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for judgment in its favor and for the following relief:

1. Entry of an order compelling Defendant NetJets to comply with the grievance adjustment procedures of the NetJets/NJASAP collective bargaining agreement, and to convene on an expedited basis the System Board of Adjustment, sitting with a neutral chair, to hear and decide finally the grievance arising from Elmore's termination, and to comply fully with its obligations under §§ 152, First, Second, Sixth and 184 of the Railway Labor Act, in connection with the resolution of the parties' dispute over Mr. Elmore's discharge

2. For its costs and attorney's fees incurred in this action.

3. For such other and further relief as the Court may deem appropriate.

Dated: October 24, 2012.	Respectfully submitted,


	s/ William R. Wilder
	William R. Wilder
	Baptiste & Wilder, PC
	1150 Connecticut Ave., NW
	Suite 315
	Washington, DC 20026
	(202) 223-0723
	(202) 223-9677 [fax]
	wwilder@bapwild.com

	*Lead counsel for Plaintiff*


	s/ Robert E. DeRose
	Robert E. DeRose (0055214)
	Katherine S. Decker (0085600)
	BARKAN MEIZLISH HANDELMAN
	GOODIN DEROSE WENTZ, LLP
	250 E. Broad St., 10th Floor
	Columbus, Ohio 43215
	Telephone: (614) 221-4221
	Facsimile: (614) 744-2300
	Email: bderose@barkanmeizlish.com
	         kdecker@barkanmeizlish.com

	*Local Counsel for Plaintiff*