IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NETJETS ASSOCIATION OF SHARED
AIRCRAFT PILOTS,

        Plaintiff,

   vs.                           Civil Action 2:12-cv-991
                                    Magistrate Judge King

NETJETS AVIATION, INC.,

        Defendant.

OPINION AND ORDER

This is an action under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, in which the plaintiff labor organization seeks to compel arbitration by the defendant air carrier of a grievance filed on behalf of Peter Elmore, a pilot whose employment was terminated, and as allegedly required by the parties' collective bargaining agreement.  This matter is now before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of *Plaintiff's Motion for Summary Judgment* ("*Plaintiff's Motion*"), Doc. No. 27, *Defendant NetJets Aviation, Inc.'s Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment*, Doc. No. 28, and plaintiff's reply, Doc. No. 30.  Also before the Court is defendant's *Motion for Summary Judgment* ("*Defendant's Motion*"), Doc. No. 26, *Plaintiff's Opposition to Defendant's Motion for Summary Judgment* ("*Plaintiff's Response*"), Doc. No. 29, and defendant's reply, Doc. No. 31.  For the reasons that follow, *Plaintiff's Motion* is **DENIED** and *Defendant's Motion* is **GRANTED**.

1

## I.  Background

Defendant NetJets Aviation, Inc. ("defendant" or the "Company"), is an air carrier that manages and operates aircraft on behalf of fractional owners and lessees. *Answer of NetJets Aviation, Inc. to Complaint to Compel Arbitration of NetJets Association of Shared Aircraft Pilots* ("*Answer*"), Doc. No. 8, at ¶ 5; *Complaint to Compel Arbitration* ("*Complaint*"), Doc. No. 1, at ¶ 5.  Defendant employs approximately 3,000 pilots, approximately 2,500 of whom are considered "line pilots" because they are actively flying for defendant. *Answer*, ¶ 6; *Complaint*, ¶ 6.  In 2007, defendant and the International Brotherhood of Teamsters, Airline Division ("IBT"), entered into a collective bargaining agreement in order to, *inter alia*, "provide for orderly collective bargaining relations pertaining to rates of pay, rules or working conditions, between the Company and its Pilots." *Collective Bargaining Agreement*, attached to *Defendant's Motion* as Exhibit 1 ("CBA"), *PAGEID* 133 *et seq*.  The CBA confers on the Company the right to "discharge . . . any employee for just cause." CBA § 2.4(A), *PAGEID* 137.

On July 11, 2008, plaintiff NetJets Association of Shared Aircraft Pilots and defendant executed a Letter of Agreement, pursuant to which plaintiff assumed all rights, responsibilities, obligations, and duties held by IBT under the CBA. *Complaint*, Exhibit 3; *Answer*, ¶ 8.  On August 26, 2008, plaintiff replaced IBT as the certified bargaining representative of the craft or class of pilots employed by defendant. *Complaint*, Exhibit 1; *Answer*, ¶ 7.

Peter Elmore was employed by defendant as a pilot on June 18,

2001. *Answer*, ¶ 11; *Complaint*, ¶ 11. As of September 2012, Elmore was employed by defendant as an Air Traffic Programs Manager, which is considered a management pilot position under the CBA. *Complaint*, ¶ 12; *Answer*, ¶ 12. Elmore's employment with defendant was terminated on September 24, 2012, as "a result of [Elmore] violating T&E policy, specifically the Business Expense Policy # 164." *Plaintiff's Motion*, Doc. No. 27-3, at p. 1. Elmore filed a grievance with plaintiff that same day, arguing that defendant "did not have just cause to terminate [his] employment." *Id*., Doc. No. 27-3, at p. 3. Plaintiff submitted Elmore's grievance to defendant and requested that the grievance proceed directly to arbitration. *See Complaint*, ¶ 17; *Answer*, ¶ 17. On October 16, 2012, defendant declined that request, taking the position that, "[b]ecause he was a management pilot at the time of his discharge, the issue of Mr. Elmore's discharge is not substantively arbitrable." *Answer*, ¶ 18; *Plaintiff's Motion*, Doc. No. 27-3, at p. 4. Plaintiff thereafter filed this action, seeking to compel arbitration under the terms of the CBA.

## II. Standard

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Pursuant to Rule 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

3

law." *Id*. In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th

4

Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574, 586 (1986)).


### III. Discussion

The facts of this case, as set forth *supra,* are not in dispute
and the parties do not contend that the record reflects a genuine
issue of material fact. Rather, the parties disagree whether the CBA
requires arbitration of Elmore's grievance and whether the
arbitrability of the parties' dispute should be determined by this
Court or, instead, by an arbitrator. *See Plaintiff's Response,* pp. 2-
3.

This action arises under the RLA, 45 U.S.C. § 151 *et seq.,* which
was designed

> to promote stability in labor-management relations by
> providing a comprehensive framework for resolving labor
> disputes. *Atchison, T. & S.F.R. Co. v. Buell,* 480 U.S.
> 557, 562, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987); *see
> also* 45 U.S.C. § 151a. To realize this goal, the RLA
> establishes a mandatory arbitral mechanism for "the prompt
> and orderly settlement" of two classes of disputes. 45
> U.S.C. § 151a. The first class, those concerning "rates of
> pay, rules or working conditions," *ibid.,* are deemed
> "major" disputes. Major disputes relate to "'the formation
> of collective [bargaining] agreements or efforts to secure
> them.'" *Conrail,* 491 U.S., at 302, 109 S.Ct., at 2480,
> quoting *Elgin, J. & E.R. Co. v. Burley,* 325 U.S. 711, 723,
> 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945). The second
> class of disputes, known as "minor" disputes, "gro[w] out
> of grievances or out of the interpretation or application
> of agreements covering rates of pay, rules, or working
> conditions." 45 U.S.C. § 151a. Minor disputes involve
> "controversies over the meaning of an existing collective
> bargaining agreement in a particular fact situation."
> *Trainmen v. Chicago R. & I.R. Co.,* 353 U.S. 30, 33, 77
> S.Ct. 635, 637, 1 L.Ed.2d 622 (1957). Thus, "major
> disputes seek to create contractual rights, minor disputes
> to enforce them." *Conrail,* 491 U.S., at 302, 109 S.Ct., at
> 2480, citing *Burley,* 325 U.S., at 723, 65 S.Ct., at 1289.

*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252-53 (1994). *See also Int'l Bhd. of Teamsters, AFL-CIO v. United Parcel Serv. Co.*, 447 F.3d 491, 498-501 (6th Cir. 2006) (discussing major and minor disputes).

The RLA also imposes a duty on every air carrier and its employees, acting through their representatives, "to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title." 45 U.S.C. § 184. Minor disputes "must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and [the] adjustment board established by the employer and the unions." *Hawaiian Airlines*, 512 U.S. at 253 (citing 45 U.S.C. § 184). *See also United Parcel Serv. Co.*, 447 F.3d at 498, 501.

However, "minor disputes contemplated by [the RLA] are those that are grounded in the CBA." *Hawaiian Airlines*, 512 U.S. at 256. The RLA also permits unions and air carriers, in forming the board of adjustment, to exempt by agreement specific disputes from arbitration. *See CareFlite v. Office & Prof'l Emps. Int'l Union, AFL-CIO*, 612 F.3d 314, 322 (5th Cir. 2010)("[M]ost of our sister circuits recognize that unions and employees can contract to exempt certain claims from arbitration through their bargained-for CBAs.") (citing *Air Line Pilots Ass'n, Int'l v. Delta Air Lines, Inc.*, 863 F.2d 87, 92-95 (D.C. Cir. 1988); *Whitaker v. Am. Airlines, Inc.*, 285 F.3d 940, 946-47 (11th Cir.

6

2002) (holding that, where parties had excluded probationary pilots from grieving discharge during probationary period, the plaintiff could point to no provision of the CBA that was violated by his discharge, and thus, the claim did not arise under the CBA and was not a minor dispute subject to arbitration); *In re Continental Airlines, Inc.*, 484 F.3d 173, 183 (3d Cir. 2007) ("The RLA does not dispense with the preliminary question of arbitrability . . . ."); *Bonin v. Am. Airlines, Inc.*, 621 F.2d 635 (5th Cir. 1980) (recognizing that the RLA's arbitration provisions apply only to disputes that arise from the terms of agreement in a CBA, not to every dispute between an employer and a union); *Air Line Pilots Ass'n v. Northwest, Airlines, Inc.*, 627 F.2d 272 (D.C. Cir. 1980) (same)). *See also CareFlite*, 612 F.3d at 323 ("[A]an air carrier and its employees' union may, under basic contract and arbitration principles, agree to exclude certain disputes from grievance and arbitration.").[1]

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Where, as here, the parties did not "clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the

---

[1] *CareFlite,* 612 F.3d 314, was decided by a quorum of two judges. One judge reasoned that a dispute was not a "minor dispute" within the meaning of the RLA because the collective bargaining agreement expressly excluded that dispute from its arbitration provisions. The concurring judge reasoned that, although the dispute was a "minor dispute" within the meaning of the RLA, "the RLA does not prohibit CareFlite and the Union from agreeing to exclude certain minor disputes from arbitration . . . ." *Id.* at 325.

court, not the arbitrator." *Id.* at 649.  "[I]n deciding whether

the parties have agreed to submit a particular grievance to

arbitration, a court is not to rule on the potential merits of

the underlying claims." *Id.*  Finally,

> where the contract contains an arbitration clause, there is
> a presumption of arbitrability in the sense that "[a]n
> order to arbitrate the particular grievance should not be
> denied unless it may be said with positive assurance that
> the arbitration clause is not susceptible of an
> interpretation that covers the asserted dispute.  Doubts
> should be resolved in favor of coverage."

*Id.* at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf*

*Navigation Co.*, 363 U.S. 574, 582-83 (1960)).  *See also United*

*Steelworkers of Am. v. Commonwealth Aluminum Corp.*, 162 F.3d 447, 451

(6th Cir. 1998) (quoting *United Steelworkers of Am. v. Mead Corp.*, 21

F.3d 128, 131 (6th Cir. 1994)); *N.W. Airlines, Inc. v. Air Line Pilots*

*Ass'n, Int'l*, 442 F.2d 251 (8th Cir. 1971) (applying the same rule in

an RLA case).

     To summarize, if the parties have agreed to exclude certain

disputes from the grievance and arbitration procedure established by

the CBA, it cannot be said that the excluded dispute arises from a

right conferred by the CBA. Accordingly, this Court is charged with

determining whether the CBA's arbitration provision is "susceptible of

an interpretation that covers" the termination of Elmore's employment.

In other words, the grievance arising out of Elmore's termination must

be submitted to the system board of adjustment grievance procedure

unless the parties agreed to exclude that dispute from that procedure.

     In the case presently before the Court, plaintiff argues

that "[t]he parties [sic] dispute over Peter Elmore's discharge

by NetJets' [sic] from his position as a crewmember, including NetJets [sic] claim the dispute is not arbitrable, are 'minor disputes' that must be heard by the parties' System Board of Adjustment." *Plaintiff's Response*, p. 1. Plaintiff further argues that the "issue of arbitrability will be 'conclusively resolved' by interpreting the Agreement and so must be submitted to arbitration before the System Board of Adjustment." *Id*. at p. 3. Plaintiff's arguments are without merit.

Plaintiff concedes that the parties may exclude specific disputes from the mandatory arbitration requirements of the RLA, *see Plaintiff's Motion*, pp. 14 ("There is no dispute from the Union that management pilots cannot grieve involuntary separations from their management pilot positions or other working conditions related to being a manager."), *id*. at p. 15 ("With respect to probationary pilots, the parties demonstrate they clearly know how to expressly exclude a grievance from their System Board grievance procedure, stating that '[d]uring the probationary period, the crewmember may be discharged or disciplined without recourse to the grievance procedure.'"). Plaintiff also concedes that it is the Court that must determine whether the parties agreed to submit Elmore's grievance to arbitration. *See Plaintiff's Response*, p. 3 n.2 ("NetJets' burden in this case is the same under either the RLA or the LMRA, if it applied, to demonstrate conclusively that Elmore's grievance is excluded from the parties' duty to arbitrate under the Agreement.").

Plaintiff, a labor organization and the certified bargaining representative of the craft or class of pilots employed by defendant,

9

*see Complaint*, Exhibit 1, and defendant, an air carrier, established a
system board of adjustment in section § 22 of the CBA. *See* CBA, §
22.1, *PAGEID* 172: Establishing the "NJA Pilots System Board of
Adjustment" "[i]n compliance with Section 204, Title II, of the
Railway Labor Act," for the "purpose . . . [of] adjust[ing] and
decid[ing] disputes which may arise under the terms of [the CBA] when
such disputes have been properly submitted to the Board." Section
22.3 of the CBA establishes the jurisdiction of the board:

> The Board will have jurisdiction over disputes between any
> crewmember covered by this Agreement and the Company
> growing out of grievances or out of interpretation or
> application of any of the terms of this Agreement. The
> jurisdiction of the Board will not extend to proposed
> changes in hours of employment, rates of compensation or
> working conditions covered by existing agreements by the
> parties hereto. The Board will have no authority to
> modify, amend, revise, add to, or subtract from any of the
> terms or conditions of this Agreement.

CBA, § 22.3, "Jurisdiction of the Board," *PAGEID* 173. "Crewmember" is
defined in CBA § 3.17 as "a non-management pilot on the NetJets
Aviation, Inc. Pilot Seniority List." CBA § 3.17, *PAGEID* 140. A
"management pilot" is defined in CBA § 3.45 as a "manager who holds a
seniority number on the NetJets Aviation, Inc. Seniority List." CBA §
3.45, *PAGEID* 142.

As noted *supra*, Peter Elmore was employed by defendant from June
18, 2001, through September 24, 2012. *See Complaint*, ¶¶ 11-12;
*Answer*, ¶¶ 11-12; *Plaintiff's Motion*, Doc. No. 27-3, at p. 1. It is
not disputed that Elmore was employed as a "management pilot" at the
time of his termination. *See, e.g.*, *Plaintiff's Motion*, pp. 13-14;
*Defendant's Motion*, p. 1. As a "management pilot," Elmore could not
also have been considered a "crewmember" under the CBA because, as

10

noted *supra*, the definition of "crewmember" is limited to "non-management pilot[s] on the NetJets Aviation, Inc. Pilot Seniority List." CBA § 3.17, *PAGEID* 140. Accordingly, because defendant's system board is vested with jurisdiction over only disputes between crewmembers and the Company, *see* CBA § 22.3, *PAGEID* 173, defendant's system board had no jurisdiction to arbitrate Elmore's grievance.

Plaintiff concedes that "management pilots cannot grieve involuntary separations from their management pilot positions or other working conditions related to being a manager." *Plaintiff's Motion*, p. 14. Plaintiff also concedes that "[m]anagement pilots, while serving in management positions, are not crewmembers and the terms and conditions of the CBA do not apply to the terms and conditions of their employment in management positions, except as expressly stated in the CBA." *Id*. Plaintiff argues that Elmore "does not seek to grieve his involuntary removal from his management position. Rather, he only seeks to grieve the Company's decision to terminate his employment which extinguished his seniority and other contractual rights that pertain to his continuance in employment *as a crewmember*." *Id*. (emphasis in original). Plaintiff takes the position that, under CBA § 3.17, Elmore was rendered a crewmember, whose grievance was subject to arbitration, upon his termination as a management pilot. *See id*. at pp. 13, 15. According to plaintiff, the definition of "crewmember" in CBA § 3.17 as "a non-management pilot on the NetJets Aviation, Inc. Pilot Seniority List"

> leads to only one conclusion, . . . that a pilot on the seniority list is either a crewmember or a management pilot. When the Company removes a management pilot from a management position, the pilot with a seniority position on

11

> the list must, of necessity, instantaneously revert to
> being a crewmember upon removal. There is no limbo for the
> pilot, he is one or the other.

*Plaintiff's Motion*, p. 15. Plaintiff's argument is untenable.

Plaintiff's construction of CBA § 3.17 ignores CBA § 5.5(E),
which expressly addresses whether a pilot removed from a management
position may return to active line flying: "A management pilot removed
from his management position **and retained by the Company** may transfer
or return to active line flying status as set forth in this subsection
5.5, Section 19, and any other applicable provisions of this
Agreement." CBA § 5.5(E), *PAGEID* 151 (emphasis added). A management
pilot does not, therefore, necessarily "instantaneously revert to
being a crewmember upon removal;" *Plaintiff's Motion*, p. 15; rather, a
pilot may become a crewmember after having been removed from a
management position only if the pilot has been retained by the
Company. Where, as here, a management pilot's employment has been
terminated by the Company, the pilot cannot return to active line
flying because the pilot has not been retained by the Company.

In a related argument, plaintiff contends that the parties
intended CBA § 5.5(E) (which addresses whether a pilot removed from a
management position may return to active line flying) "to incorporate
the parties' understanding that 'just cause' would apply to a
management pilot's discharge from a line pilot position, and the
Company's just cause determination could be grieved." *Plaintiff's
Motion*, pp. 6-7. Plaintiff's argument presumes that a management
pilot is in all instances automatically transformed into a crewmember
(or a "line pilot") upon removal from a management position. However,

as discussed *supra*, this is simply not the case.  Nothing in the plain language of CBA § 5.5(E) suggests that the parties intended such a result except where the pilot has been "retained by the Company."  *See* CBA § 5.5(E), *PAGEID* 151.

In another related argument, plaintiff contends that, because management pilots "maintain and accrue additional seniority while working in a management pilot position," the CBA must be construed to permit them to "return to line flying crewmember positions as long as they pay the contractually required monthly service fee to the Union to maintain their seniority list position while holding a management pilot position." *Plaintiff's Motion*, p. 8.  This argument is equally unavailing.  It is true that management pilots continue to accrue seniority while working in a management pilot position and are required to "pay a monthly service fee to the Union." *See* CBA § 5.5(B), *PAGEID* 148.  Nevertheless, there is nothing in the CBA that suggests that the accrual of seniority or payment of union dues vitiates the plain language of § 5.5(E).  Furthermore, plaintiff's arguments to the contrary notwithstanding, a management pilot directly benefits from the requirement that he or she maintain his or her position on the seniority list because a management pilot must appear on the seniority list in order to perform flight duty, *see* CBA § 5.5(D), "Limitation on Management Pilot Line Flying," *PAGEID* 293, management pilots are furloughed according to their position on the seniority list, *see* CBA § 7.10, "Management Pilots," *PAGEID* 483, and a management pilot may, in some circumstances, return to line flying after he or she is removed from a management position.  *See* CBA §

13

5.5(E), "Removal from Management," *PAGEID* 294.

Finally, plaintiff poses a number of hypotheticals, cites to portions of the CBA that refer to "pilots" or "employees," refers to deposition testimony regarding contract negotiations leading up to the execution of the CBA, and argues that there are "potentially conflicting provisions" in the CBA. *See Plaintiff's Response*, pp. 3-12. These arguments, too, are without merit.

First, the fact that plaintiff represents defendant's "Pilots" does not mean that every pilot represented by plaintiff enjoys equal rights under the CBA. *See, e.g.*, CBA § 5.5(B), *PAGEID* 148: "Except where indicated [in the CBA], the rates of pay, rules, and working conditions set forth in the [CBA] will not apply to management pilots."). Similarly, the fact that the CBA was "made between the Company and the union as representative of the *employees* composing the craft or class of *Pilots*," *see Plaintiff's Response*, p. 4 (emphasis in original), does not entitle every employee or pilot to the same rights under the agreement.

In minimizing the incongruity between its position and the plain language of CBA § 5.5(E), plaintiff also refers to a number of provisions in CBA § 21, characterizing those provisions as ambiguous or contradictory. However, those provisions address the discharge or discipline of a "crewmember," not a "management pilot." *See* CBA §§ 21.1(A), 21.1(B), *PAGEID* 165. Those provisions simply do not apply to Elmore, who was a "management pilot," not a "crewmember."

Finally, plaintiff proffers evidence intended to explain the parties' bargaining positions and the course of negotiations leading

14

up to the execution of the CBA.  *See e.g.*, *Plaintiff's Motion*, pp. 6-7.  However, the Court declines to consider this parol evidence in its construction of the plain and unambiguous language of CBA § 5.5(E).  *See e.g.*, *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 377 (6th Cir. 1999); *Constr. Interior Sys., Inc. v. Marriott Family Rests., Inc.*, 984 F.2d 749, 756 (6th Cir. 1993).

The CBA confers on the system board the jurisdiction to arbitrate disputes "between any crewmember covered by [the CBA] and the Company growing out of grievances or out of interpretation or application of any of the terms of [the CBA]."  CBA § 22.3, *PAGEID* 173.  Because Elmore was a "management pilot" and not a "crewmember" at the time of the termination of his employment, see, *e.g.*, *Plaintiff's Motion*, pp. 13-14; *Defendant's Motion*, p. 1, that grant of jurisdiction cannot be read as extending to a grievance filed on behalf of Elmore.  Defendant is therefore entitled to judgment as a matter of law.

**WHEREUPON**, *Defendant's Motion*, Doc. No. 26, is **GRANTED**.  *Plaintiff's Motion*, Doc. No. 27, is **DENIED**.  The Clerk is **DIRECTED** to enter **FINAL JUDGMENT.**


January 3, 2014                          *s/Norah McCann King*
                                         Norah McCann King
                                         United States Magistrate Judge